1  Kirsten A. Milton, State Bar No. 14401
   **JACKSON LEWIS P.C.**
2  300 S. Fourth Street, Suite 900
   Las Vegas, Nevada 89101
3  Telephone: (702) 921-2460
   Facsimile: (702) 921-2461
4  kirsten.milton@jacksonlewis.com

5  Melisa H. Panagakos (*pro hac vice*)
   **JACKSON LEWIS P.C.**
6  950 17th Street
   Suite 2600
7  Denver, CO 80202
   Telephone: (303) 892-0404
8  Facsimile: (303) 921-2461
   melisa.panagakos@jacksonlewis.com

9

10  *Attorneys for Defendant Landry's Inc. d/b/a*
    *Golden Nugget*

11

12              **UNITED STATES DISTRICT COURT**

13                  **DISTRICT OF NEVADA**

14
    RITA LEGER, individually,
15  RAYMOND ALLEN, individually,
    DIYANA VALKANOVA, individually;
16  CHRISTINE CHENH, individually;
    ANTHONY DICH, individually;
17  FELICIDAD RITER, individually and on behalf
    of other members of the general public similarly
18  situated,                                         Case No. 2:20-cv-02274-RFB-NJK

19          Plaintiffs,

20      v.

21  LANDRY'S INC. d/b/a GOLDEN NUGGET,
    and DOES 1 through 25,
22
            Defendant.
23

24          **SETTLEMENT AGREEMENT AND RELEASE**

25      Subject to the approval of the United States District Court for the District of Nevada, the
26  Parties Rita Leger, Raymond Allen, Diyana Valkanova, Christine Chenh, Anthony Dich, and
    Felicidad Riter (collectively, "Named Plaintiffs") and Defendant GNLV, LLC d/b/a Golden Nugget
27  Las Vegas Hotel and Casino (incorrectly identified as "Landry's Inc. d/b/a Golden Nugget") and
    any of its parents, subsidiaries and affiliates ("Defendant") (collectively, with the Settling Plaintiffs,
28

Jackson Lewis P.C.
Las Vegas

1    as defined below, the "Parties") agree to the following Settlement Agreement and Release (the
2    "Agreement" or "Settlement Agreement").

3                                              **Recitals**

4            Whereas, on November 13, 2020, Named Plaintiffs filed an action entitled *Rita Leger,
     *Raymond Allen, Diyana Valkanova, Christine Chenh, Anthony Dich, and Felicidad Riter, on*
5    *theirown behalf and on behalf of all others similarly situated v. Landy's Inc. d/b/a Golden Nugget*,
     Case No. A-20-824753-C, in the District Court of Clark County, Nevada;
6
7            Whereas, on December 16, 2020, Defendant removed the Complaint to the United States
     District Court for the District of Nevada, Case No. 2:20-cv-02274-RFB-NJK;

8            Whereas, Defendant has denied and continues to deny each of the claims and contentions
9    alleged by Named Plaintiffs in this Action, denies any wrongdoing or legal liability arising out of
     or related to any of the facts or conduct alleged in this Action, and believes that it has valid defenses
10   to Named Plaintiffs' claims;

11           Whereas, in agreeing to the settlement embodied in the Settlement Agreement, the Parties
     have considered: (i) the facts developed during the pendency of the Action and the law applicable
12   thereto; (ii) the attendant risks of continued litigation and the uncertainty of the outcome of the
     Action; (iii) the desirability of permitting the settlement to be consummated according to the terms
13   of the Settlement Agreement; and (iv) the conclusion of the Parties and their counsel that the terms
     and conditions of this Agreement are fair, reasonable, adequate, and that it is in the Parties' best
14   interests to settle the Action as set forth below;

15
             Whereas, the Parties agree to cooperate and take all steps necessary and appropriate to
16   dismiss this Action with prejudice; and

17           Whereas, it is the intention of the Parties that this Settlement Agreement shall constitute a
     full and complete settlement of all released claims as described in Paragraph 5 against all Releasees.
18
19           **NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** among the
     Parties, by and through their respective attorneys of record, and subject to the approval of the Court,
20   that in consideration of the foregoing and of the promises and mutual covenants contained herein,
     and other good and valuable consideration, the Action shall be settled, released and dismissed with
21   prejudice, upon and subject to the following terms and conditions:

22           1.      **Definitions.** For purposes of this Agreement, the following definitions shall
     apply:
23
24           a.      "Action" shall mean and refer to the action entitled *Leger v. Landry's Inc.*
     *d/b/a Golden Nugget*, Case No. 2:20-cv-02274-CDS-NJK pending in the United States District
25   Court for the District of Nevada;

26           b.      "Court" means the United States District Court for the District of Nevada.

27           c.      "Defendant" shall mean and refer to GNLV, LLC d/b/a Golden Nugget Las
     Vegas Hotel and Casino.
28

1

d.      "Defendant's Counsel" shall mean the law firm of Jackson Lewis, P.C.

2

e.      "Effective Date" shall mean the date upon which the Court's order granting approval of the Settlement Agreement and Release is not subject to further judicial review. At no time will Defendant have any obligation under this Agreement until after the Effective Date.

3

4

f.      "Named Plaintiffs" shall mean Rita Leger, Raymond Allen, Diyana Valkanova, Christine Chenh, Anthony Dich, and Felicidad Riter.

5

6

g.      "Opt-In Plaintiffs" shall mean each of the 76 individuals listed in Exhibit A who completed consent forms requesting to participate in this Action.

7

h.      "Plaintiffs' Counsel" shall mean Burke Huber of the Van Law Firm.

8

9

i.      "Settling Plaintiffs" shall mean the Named and Opt-In Plaintiffs who are included within the scope of the Settlement.

10

11

j.      "Settlement Administrator" shall mean CPT Group, Inc., the entity responsible for administering the entire Gross Settlement Amount, including all applicable tax withholding, and issuing all applicable tax forms and completing all required tax reporting.

12

13

**2.      Gross Settlement Amount and Qualified Settlement Fund.**

14

a.      In consideration for the actions, promises and mutual covenants and releases described herein, and subject to Court approval, Defendant agrees to pay the total sum of Fifty-Two Thousand Dollars ($52,000.00) (the "Gross Settlement Amount") to resolve all of Named and Settling Plaintiffs' released claims as described in Paragraph 5 below. The Gross Settlement Amount includes all amounts to be paid by Defendant, including amounts for payments to Settling Plaintiffs, attorneys' fees, litigation costs and expenses of Plaintiffs' Counsel, mediation costs, all costs and expenses associated with the administration of the settlement, and all payroll taxes and all other applicable taxes (with the sole exception and exclusion of the employer's share of payroll taxes as described in this Paragraph). Other than the employer's share of payroll taxes described in this Paragraph, Defendant will not be required to pay more than the gross total of Fifty-Two Thousand Dollars ($52,000.00) under the terms of this Settlement Agreement. If Settling Plaintiffs and/or Plaintiffs' Counsel try to impose additional payments, fees, or expenses on Defendant beyond the Gross Settlement Amount, Defendant shall have the right to rescind the Settlement Agreement. Defendant shall also be responsible for payment of the employer's share of payroll taxes resulting from payments of the Net Settlement Amount to Settling Plaintiffs and such amount shall not be deducted from the Gross Settlement Amount described herein.

15

16

17

18

19

20

21

22

23

b.      No later than twenty-one (21) business days after the Effective Date, Defendant shall deposit the Gross Settlement Amount into an interest-bearing escrow account to be opened, administered, and controlled by the Settlement Administrator. The account shall be opened and administered by the Settlement Administrator as a Qualified Settlement Fund ("QSF") under Section 468B of the IRC and Treas. Reg. § 1.468B-1 *et seq.* While held in the QSF, the funds in the QSF shall accrue interest at the then-current rate of the interest-bearing FDIC insured checking account. The Settlement Administrator shall be the "administrator" of the QSF within the meaning of Treas. Reg. § 1.468B-2(k)(3). Defendant shall be the "transferor" with respect to the QSF within the meaning of Treas. Reg. § 1.468B-1(d)(1). The Settlement Administrator shall provide to

24

25

26

27

28

1  Defendant a properly completed and duly executed IRS Form W-9 of the QSF prior to the deposit
of the Gross Settlement Amount to the QSF.  The Settlement Administrator shall cooperate as
2  requested by Defendant in the making of any election with respect to the QSF, including a "relation-
back election" pursuant to Treas. Reg. § 1.468B-1(j).
3

4              c.      With respect to the QSF, the Settlement Administrator shall: (1)
calculate, withhold, remit and report each Settling Plaintiffs' share of applicable payroll taxes
5  (including, without limitation, federal state and local income tax withholding, FICA, Medicare and
any state or local employment taxes); (2) satisfy all federal, state and local and income and other
6  tax reporting, return and filing requirements with respect to the QSF; and (3) satisfy out of the QSF
all (i) taxes (including any estimated taxes, interest or penalties) with respect to the interest or other
7  income earned by the QSF, and (ii) fees, expenses and costs incurred in connection with the opening
and administration of the QSF and the performance of its duties and function as described in this
8  Settlement Agreement, which such fees, costs and expenses shall be treated as and included in the
costs of administering the QSF.
9

10            **3.      Disbursement of Gross Settlement Amount.**

11             a.      TWENTY-EIGHT THOUSAND NINETY-SEVEN AND 77/100
Dollars ($28,097.77) ("Net Settlement Amount") will be distributed pro rata to the Settling
12  Plaintiffs.  Each Settling Plaintiff will receive a pro rata share of the Net Settlement Amount based
on the number of eligible vacation hours each Settling Plaintiff had at the end of his or her
13  employment with Defendant in June and/or July 2020.  Half of this amount will represent back
14  wages and half will represent liquidated damages, penalties, and other consideration for all Settling
Plaintiffs.
15

16             b.      Each Settling Plaintiff will receive two separate checks, each of
which will be for 50% of the settlement amount allocated to that Settling Plaintiff.  The first check
17  will be allocated to wages, and payroll taxes will be withheld from this payment, which will be
reported on a W-2 form.  The second check will be allocated to liquidated damages under the FLSA,
18  and payroll taxes will not be withheld from this payment, which will be reported on an IRS 1099
form.  Defendant shall pay the employer's share of all required payroll taxes on the payments
19  outlined in this Paragraph.

20             c.      It is expressly understood and agreed that the receipt of any payment
under this Settlement Agreement will not entitle any Settling Plaintiff to additional compensation
21  or benefits from Defendant.

22             d.      Each Settling Plaintiff shall be entitled to obtain his or her own
23  independent tax advice concerning the proper income reporting and tax obligations regarding any
and all payments and/or other remuneration he or she receives or obtains pursuant to this
24  Agreement, and shall further assume the responsibility of remitting to the IRS and any other
relevant taxing authorities any and all amounts required by law to be paid out of any monies
25  received, or other remuneration obtained, under this Agreement, without any contribution
whatsoever from any of the Releasees or Plaintiffs' Counsel. Nothing in this Settlement Agreement
26  shall be construed as Defendant or Plaintiffs' Counsel providing any advice regarding the reporting
27  or payment of taxes or the tax consequences of a Settling Plaintiffs' participation in any portion of
this Agreement.
28

Jackson Lewis P.C.
Las Vegas

4

e.    Fees and Costs to Plaintiffs' Counsel. Subject to Court approval, TEN THOUSAND FOUR HUNDRED AND 00/100 DOLLARS ($10,400.00) of the Gross Settlement Amount will be paid to Van Law Firm for reasonable fees ("Fees Fund") as follows:

i.    Settling Plaintiffs' reasonable attorney's fees and expenses approved by the Court shall be paid from the Fees and Costs Fund. Defendant will issue IRS Form 1099s in accordance with the law for this amount. Plaintiffs' Counsel is not entitled to any additional attorney's fees and expenses in connection with this Action, inclusive of all prior pleadings, in excess of what is approved by the Court in connection with this Agreement.

ii.    Settling Plaintiffs will file a separate motion to the Court for approval of the Fees and Costs Fund, which Defendant will not oppose, only if the same is required by the Court following the Joint Motion for Settlement Approval.

iii.    If the Court refuses to approve Plaintiffs' Counsel's attorney's fees as stated herein, in whole or in part, it will have no impact on the enforceability of the remainder of this Agreement subject to all available appellate rights relating to Settling Plaintiffs' attorneys' fees and costs application. All Parties agree not to appeal the enforceability of the remainder of the Settlement Agreement regardless of the Court's approval or non-approval of the requested attorney's fee/costs award.

iv.    The payment of the fees and litigation expenses award to Plaintiffs' Counsel shall constitute full satisfaction of the obligation to pay any amounts to any person, attorney or law firm for attorneys' fees, expenses or litigation expenses in the Action incurred by any attorney on behalf of Settling Plaintiffs, and shall relieve Defendant, the Releasees, the Settlement Administrator, and Defendant's Counsel of any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses and/or costs to which any of them may claim to be entitled on behalf of Settling Plaintiffs. In exchange for such payment, Plaintiffs' Counsel will release and forever discharge any attorneys' lien on the Gross Settlement Amount.

f.    Fees and Costs to Settlement Administrator. SIX THOUSAND SIX HUNDRED SEVENTY-SIX AND 40/100 DOLLARS ($6,676.40) of the Gross Settlement Amount shall be paid to the Settlement Administrator (CPT Group) for the costs and fees associated with the administration of the settlement.

g.    Mediation Costs. FOUR THOUSAND TWO HUNDRED AND 00/100 DOLLARS ($4,200.00) of the Gross Settlement Amount will be paid for the costs and fees associated with the Parties' mediation.

h.    Notice Cost to CPT Group. ONE THOUSAND TWO HUNDRED ELEVEN AND 30/100 DOLLARS ($1,211.30) in costs associated with notice to the class members.

i.    Filing and Service Fees. $1,414.53 paid in filing fees, service fees and costs associated with this litigation.

j.    Timeline of Payments.  The Parties contemplate the following timeline for payments:

i.    Within seven (7) days after the Effective Date, Defendant will

provide the Settlement Administrator with a list of the Settling Plaintiffs ("Class List") that shall contain Settling Plaintiffs' names, phone numbers, social security numbers, last-known mailing addresses and personal email addresses, if available. Plaintiffs' Counsel will provide the Settlement Administrator with any updated mailing addresses, email addresses or telephone numbers he has in his possession for Settling Plaintiffs within seven (7) days of Defendant's production of the Class List.

     ii. No later than fourteen (14) days after the Effective Date, the Settlement Administrator shall determine the employer's share of payroll employment taxes on the settlements payments to be paid to Settling Plaintiffs and shall communicate such amount to Defendant with a detailed explaining of the calculations. No later than thirty (30) days after the Effective Date, Defendant will deposit the employer's share of applicable payroll taxes into the QSF. In the event of any dispute as to the calculation of employer's share of payroll taxes, the Parties and Settlement Administrator shall meet and confer in good faith in an attempt to resolve the dispute. If the dispute cannot be resolved, it shall be submitted to the Court for a final determination. The Settlement Administrator shall thereafter remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities on a timely basis pursuant to its duties and undertakings. Defendant agrees to reasonably cooperate with the Settlement Administrator to the extent necessary to determine the amount of the payroll tax payment required under this subparagraph.

     iii. No later than thirty (30) days after the Effective Date, Defendant will deposit the Gross Settlement Amount into the QSF.

     iv. Within fourteen (14) days of the date Defendant deposits the Gross Settlement Amount into the QSF, the Settlement Administrator will deliver the Fees and Costs Fund to Plaintiffs' Counsel by wire transfer. Within twenty-one (21) days after the date Defendant funds the QSF with the Gross Settlement Amount and the employer's share of payroll employment taxes, the Settlement Administrator shall mail all Settling Plaintiffs their pro rata settlement awards from the Net Settlement Amount. The front of the envelopes containing the settlement checks shall be marked with words identifying the contents as important and/or time sensitive.

     v. The deadline for recipients to cash checks will be ninety (90) days from the date the checks are issued by the Settlement Administrator. The Settlement Administrator will remit any uncashed check(s) to the State of Nevada as unclaimed property of the particular Settling Plaintiff(s) who did not cash their settlement check.

    **4.** **Nullification of the Settlement Agreement.** In the event: (a) the Court does not approve the Settlement for any reason other than refusal to approve Plaintiffs' Counsel's attorney's fees as stated herein, in whole or in part; or (b) the Settlement Agreement does not become final for any other reason other than refusal to approve Plaintiffs' Counsel's attorney's fees as stated herein, in whole or in part; or (c) the Effective Date does not occur, the Parties agree to engage in follow-up negotiations with the intent of resolving the Court's concerns that precluded approval, and if feasible, to resubmit the settlement for approval within thirty (30) days. If the Settlement Agreement is not approved as resubmitted or if the Parties are not able to reach another agreement, then either party may void this Agreement; at that point, the Parties agree that each shall return to their respective positions as of the date of the filing of the Joint Motion for Settlement Approval and this Agreement shall not be used in evidence or argument in any other aspect of the

1  Action.

2    **5.    Release of Wage Claims.** Subject to the approval of the Court, in consideration of the benefits inuring to the Parties hereto, each and every Settling Plaintiff, on

3  behalf of himself/herself and his/her respective heirs, beneficiaries, devisees, legatees, executors,

4  administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, releases and forever discharges:  (i) Defendant; (ii) any current or former subsidiary,

5  parent company, affiliated entity, related entity, successor, assign, or division of Defendant; and (iii) any current or former officer, director, trustee, agent, employee, shareholder, member,

6  representative, advisor, insurer, attorney, or employee benefit or welfare program or plan (including the administrators, trustee, fiduciaries, and insurers of such program or plan) of any entity

7  referenced in or encompassed by subsection (i) or (ii) hereof (collectively, "Releasees"), from any and all claims related to wages, overtime, bonuses, tips, or any other compensation that were or

8  could have been brought by him or her in the Action, whether known or unknown, through the date of this Settlement Agreement, under federal, state, or local wage and hour law, including but not

9  limited to such claims under the Fair Labor Standards Act or any state minimum wage laws, state

10  wage payment and collection laws, state overtime statutes, state common law and unjust enrichment, or pursuant to express or implied wage contract claims for hours worked up to and

11  including the date of this Settlement Agreement.  This release shall not include any damages related

12  to or arising from claims currently pending before the Equal Employment Opportunity Commission or Nevada Equal Rights Commission related to Defendant's decision not to reinstate certain Table

13  Games Dealers in June and July 2020.

14    **6.    Governing Law and Interpretation.** This Agreement shall be governed and interpreted in accordance with the laws of the State of Nevada.  In the event of a breach of any

15  provision of this Agreement, any party may institute an action specifically to enforce any term or terms of this Agreement and/or seek any damages for breach.

16

17    **7.    Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed

18  at any time for any purpose as an admission by the Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.  Defendant expressly denies any wrongdoing whatsoever

19  in connection with the allegations in the Action.

20    **8.    Amendment.** This Agreement may not be modified, altered or changed

21  except in writing and signed by all Parties.

22    **9.    Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties.

23  Settling Plaintiffs acknowledge that they have not relied on any representations, promises, or agreements of any kind made in connection with their decision to accept this Agreement, except

24  for those expressly set forth in this Agreement.

25    **10.    No Press Releases.** Neither party or their counsel shall issue any press

26  releases regarding this settlement.

27    **11.    Counterparts.** This Agreement may be executed in one or more counterparts and by facsimile, email or electronic signature.  All executed copies of this Agreement,

28  and photocopies thereof (including facsimile and/or emailed copies of the signature pages), have

1   the same force and effect and shall be as legally binding and enforceable as the original.

2         **12.**    **Invalid Without Court Approval.** This Agreement is subject to approval
3   by the United States District Court for the District of Nevada. Except as stated below and in
    Paragraph 4 above, in the event the Agreement is not approved, the Parties agree that: (1) the
4   Agreement shall be deemed null and void, of no force and effect, and of no probative value; (2) it
    will not be used or referred to for any purpose whatsoever regarding the pursuit of the claims or
5   defenses at issue in the Action; and (3) the Parties shall return to their respective positions
    immediately prior to the execution of this Agreement. If the Court does not approve any particular
6   provision in this Agreement, the Parties may agree to sever any such provision and resubmit the
7   Agreement to the Court for approval.

8         **13.**    **Retention of Jurisdiction.** The Court shall retain jurisdiction with respect
    to the interpretation, implementation, and enforcement of the terms of this Agreement and all orders
9   and judgments entered in connection therewith, and the Parties and their counsel hereto submit to
    the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the settlement
10  embodied in this Agreement and all orders and judgments entered in connection therewith.

11        **SETTLING PLAINTIFFS HAVE HAD A REASONABLE AMOUNT OF
    TIME TO CONSIDER THIS AGREEMENT AND TO CONSULT WITH COUNSEL**
12  **REGARDING THIS AGREEMENT. SETTLING PLAINTIFFS FREELY AND**
    **KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTER INTO THIS**
13  **AGREEMENT.**

14
          The Parties knowingly and voluntarily sign, and affirm that the signatory below is
15  duly authorized to sign, this Settlement Agreement as a valid and binding act of each, as of the
    date(s) set forth below:
16

17  **GNLV, LLC**

18
    By: _____      Date: June 23, 2023
19

20  **RITA LEGER (on behalf of herself and all other Settling Plaintiffs)**

21
    By: _____      Date: 06 / 22 / 2023
22

23

24  By: _____      Date: _____

25  **PLAINTIFFS' COUNSEL (on behalf of all Settling Plaintiffs):**

26
    By: _____      Date: 6/22/23
27      Dated this ____ day of _____, 2022.

28

VAN LAW FIRM

_/s/ Burke Huber_
Burke Huber, State Bar No. 10902
1290 S. Jones Blvd.
Las Vegas, Nevada 89146

_Attorneys for Plaintiffs_

JACKSON LEWIS P.C.

_/s/ Kirsten A. Milton_
Kirsten A. Milton, State Bar No. 14401
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101
Telephone: (702) 921-2460

Melisa H. Panagakos (pro hac vice)
950 17th Street
Suite 2600
Denver, CO 80202

_Attorneys for Defendant_

**IT IS SO ORDERED**_____, 2022.


_____
U.S. DISTRICT/MAGISTRATE JUDGE